IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KAPUA SPROAT and KOSENA FONOIMOANA,<br><br>    Plaintiffs,<br><br> vs.<br><br>JP MORGAN CHASE BANK, N.A., ENLOE ENTERPRISES, INC., PRIVATE CAPITAL GROUP, INC., PARKER ENLOE, and ANDREW SHIRLEY,<br><br>    Defendants.<br>_____ | CIVIL NO. 10-00519 JMS/LEK<br><br>ORDER DENYING DEFENDANTS ENLOE ENTERPRISES, INC., PRIVATE CAPITAL GROUP, INC., PARKER ENLOE, AND ANDREW SHIRLEY'S MOTION TO DISMISS AND TO COMPEL ARBITRATION |

**ORDER DENYING DEFENDANTS ENLOE ENTERPRISES, INC., PRIVATE CAPITAL GROUP, INC., PARKER ENLOE, AND ANDREW SHIRLEY'S MOTION TO DISMISS AND TO COMPEL ARBITRATION**

**I. INTRODUCTION**

On September 8, 2010, Plaintiffs Kapua Sproat ("Sproat") and Kosena Fonoimoana ("Fonoimoana") (collectively, "Plaintiffs") filed this action alleging Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* and state law claims against Defendants JP Morgan Chase Bank, N.A., Enloe Enterprises, Inc. ("Enloe Enterprises"), Private Capital Group, Inc. ("PCG"), Parker Enloe ("Enloe"), and Andrew Shirley ("Shirley"). As alleged in the Complaint, Enloe Enterprises, PCG, Enloe, and Shirley ("Moving Defendants") convinced Plaintiffs to take out a

mortgage on their residence and provide the money to Moving Defendants to invest in short-term, high-interest loans on Plaintiffs' behalf. Plaintiffs assert claims based on various alleged misrepresentations and TILA violations committed by Defendants.

Currently before the court is Moving Defendants' Motion to Dismiss and to Compel Arbitration. Moving Defendants argue that Plaintiff's TILA claim is time-barred and Plaintiffs agreed to arbitrate any disputes with Moving Defendants relating to the loan. Based on the following, the court DENIES Moving Defendants' Motion.

## II. BACKGROUND

**A.  Factual Background**

*1.  Allegations in the Complaint*

As alleged in the Complaint, on February 13, 2006, Sproat and her friend Laura Adolpho ("Adolpho") attended an investment seminar in which individuals were told to stand if they had more than a certain amount in equity in their home. Compl. ¶¶ 15, 18. As the amounts increased to more than $600,000 in equity, Sproat and Adolpho were the only ones left standing. *Id.* ¶¶ 19-20. As a result, Shirley asked, and Sproat agreed, for Shirley to come to Sproat's home and make a follow-up presentation. *Id.* ¶ 21.

At the later presentation, Shirley told Sproat that she and her husband, Fonoimoana, could use the equity in their home to raise cash for short-term loans by taking out a mortgage loan with a negative ARM. *Id.* ¶¶ 22-23. Plaintiffs would give the money from the mortgage loan to Moving Defendants for use in 180-day loans with interest rates between eighteen and twenty-four percent. *Id.* ¶ 26. Shirley explained that if borrowers pay late, then late payment fees would raise the income from these loans even more, and if borrowers default, Plaintiffs would get collateral for the loans that was worth far more than the loans themselves. *Id.* ¶¶ 26, 28. Shirley further explained that the income Plaintiffs will receive from the loans would pay the mortgage and cover the negative amortization such that within five years, the entire mortgage loan would be paid off. *Id.* ¶ 37.

Believing Shirley's representations, in November 2007, Plaintiffs entered into a refinancing transaction of their home mortgage for $500,000 with Washington Mutual (now owned by Chase). *Id.* ¶¶ 29-30, 46, 53. Shirley filled out the loan application for Plaintiffs, and deliberately misstated their income as twice the amount ($13,660) so that the loan would be approved. *Id.* ¶¶ 31-33. Plaintiffs were also charged a yield spread premium of $8,125 in connection with their loan, which was paid to Enloe Enterprises for arranging a higher interest rate loan than which Plaintiff would have otherwise been qualified for. *Id.* ¶¶ 44-45.

Further, Plaintiffs received only one copy of the Notice of Right to Cancel. *Id.* ¶ 47.

Plaintiffs subsequently wired the proceeds of their mortgage loan -- a total of $250,000 -- to Enloe Enterprises and PCG. *Id.* ¶ 36. Since providing this money to Enloe Enterprises and PCG, Plaintiffs have received no payments from Enloe Enterprises, and have received total payments from PCG for less than $5,000 over the past four years. *Id.* ¶ 38.

### 2. *Agreements*

In entering into this investment scheme with Moving Defendants, Plaintiffs signed two separate agreements.

The first agreement is entitled "Assumption of Risk and Release Form" ("Release Form"), which is signed by Plaintiffs and dated February 22, 2007. The Release Form outlines for Plaintiffs "certain areas of risk that you should know about before you decide to obtain advice from [Enloe Enterprises] regarding investment opportunities." Moving Defs.' Mot. Ex. B. After outlining various risks of investing, the Release Form provides:

> 5. <u>Choice of Law</u>. The laws of the state of Nevada shall govern the validity of this Agreement, the construction of its terms and interpretation of the rights and duties of the parties thereto.
> 6. <u>Arbitration</u>. Any controversies arising out the terms of this Agreement or its interpretation shall be

> settled in Nevada in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof.

*Id.*

The second agreement, dated January 4, 2008, is entitled "Loan Servicing Agreement" and is signed by Plaintiffs and a representative of CDP. This Loan Servicing Agreement explains its scope as follows:

> [Plaintiffs] retain[] [CDP] as [Plaintiffs'] agent to employ commercially reasonable and prudent practices to collect all payments on any loan in which Plaintiffs participate[] as a lender or "holder" as indicated on a promissory note (the "Loan" or collectively the "Loans"), including the protection of the security for the Loans. [CDP] shall consult with and follow instructions from [Plaintiffs] on non-routine collection matters. . . .

*Id.* Ex. A, ¶ 1.

The Loan Servicing Agreement further provides that disputes arising out of the Agreement are subject to arbitration:

> All disputes between the parties and/or the borrower, and their respective officers, directors, agents, employees and assignees, arising out of this Agreement or relating to the Loan, including, the arranging and servicing of the Loan and any services in connection with the property acquired, shall be determined by binding arbitration under the applicable rules of the American Arbitration Association. Judgment on the arbitrator's award may be entered in any court having jurisdiction. [Plaintiffs] acknowledge[] that by agreeing to arbitration, [Plaintiffs

> are] waiving [Plaintiffs'] right to have the dispute litigated in a court or jury trial, with rights of discovery, application of the rules of evidence and appeal.

*Id.* ¶ 14.2. Finally, the Loan Servicing Agreement provides that it "shall be interpreted and construed in accordance with the laws of the State of Utah." *Id.* ¶ 14.6.

Plaintiffs assert that they do not recall seeing or signing either of these agreements, they never received copies of these agreements until Defendants filed their Motion, and they would never have signed any document waiving their right to a court trial. *See generally* Sproat and Fonoimoana Decls.

### B.     Procedural Background

On September 8, 2010, Plaintiffs filed their Complaint alleging claims against Defendants for violation of TILA (Count I), violation of Hawaii Revised Statutes ("HRS") Ch. 480 (Count II), unconscionability (Count III), breach of fiduciary duty (Count IV), fraud and misrepresentation (Count V), and unlicensed brokering (Count VI).

On October 19, 2010, Moving Defendants filed their Motion to Dismiss and to Compel Arbitration. Plaintiffs filed their Opposition on December 13, 2010, and Defendants filed their Reply on December 23, 2010. A hearing was held on January 5, 2011.

### III. **STANDARDS OF REVIEW**

A.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.* at 1950.

**B.     Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which applies to arbitration agreements in contracts involving transactions in interstate commerce, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) ("Congress enacted the FAA more than eighty years ago to advance the federal policy favoring arbitration agreements."). "The standard for demonstrating arbitrability is not high. The Supreme Court has held that "the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)). Indeed, the factual allegations need only "'touch matters' covered by the contract containing

the arbitration clause" for arbitration to be triggered. *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)).

In deciding whether to compel arbitration, the court may not review the merits of the underlying dispute. Instead, the court must examine whether: (1) there exists a valid agreement to arbitrate; (2) the parties' dispute falls within their arbitration agreement; and (3) there exists "a defense that would be available to a party seeking to avoid the enforcement of any contract." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991); *see also Lowden*, 512 F.3d at 1217 ("[T]he court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." (citation and quotation signals omitted)).

If the court concludes that the lawsuit at issue is covered by an enforceable arbitration agreement, and one party to the agreement seeks to enforce the arbitration provision, the court may stay the lawsuit until the arbitration has been completed. 9 U.S.C. § 3. A stay, however, is not mandatory and the court may alternatively dismiss those claims that are subject to arbitration. *See Thinket Ink Info. Res. Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004).

## IV. **DISCUSSION**

Moving Defendants raise two separate arguments -- first, that Plaintiff's TILA claim must be dismissed as untimely, and second, that Plaintiffs should be compelled to arbitrate their state law claims against Moving Defendants pursuant to the agreements. The court addresses these arguments in turn.

### A.     Motion to Dismiss Plaintiffs' TILA Claim

Plaintiffs allege a TILA claim against all Defendants, seeking both damages and rescission. Moving Defendants argue, in wholly conclusory fashion, that Plaintiffs' claim is time-barred because a TILA claim for rescission is subject to a three-year statute of limitations,[1] and Plaintiffs brought this action more than three years after entering into the mortgage loan transaction. Moving Defendants do not even address Plaintiffs's TILA claim for damages, and more importantly, do

---

[1] Moving Defendants over-simplify the TILA statute of limitations analysis. TILA provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures.]" 15 U.S.C. § 1635(a). If the required disclosures are not provided, however, the right to rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). This three-year statute of limitations is not subject to equitable tolling. *See Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King v. California*, 784 F.2d 910, 913 (9th Cir. 1986)). In comparison, a TILA claim for damages must be brought "within one year from the date of the occurrence of the violation," 15 U.S.C. § 1640(e), unless equitable tolling applies. *See King*, 784 F.2d at 915.

Moving Defendants do not distinguish between the types of relief Plaintiffs seek pursuant to TILA and the court expresses no opinion at this time whether Plaintiffs have stated a timely claim for both damages and rescission pursuant to TILA.

not have their facts straight -- as alleged in the Complaint and as corroborated by the Complaint's exhibits, *see* Compl. ¶ 46; *id.* Exs. B-D, Plaintiffs entered into the mortgage loan transaction in November 2007, and brought this action less than three years later on September 8, 2010.  Because Plaintiffs' TILA claim for rescission does not appear to be time-barred, the court DENIES Moving Defendants' Motion to Dismiss Plaintiffs' TILA claim.

**B.     Motion to Compel Arbitration**

Applying Hawaii state law, Moving Defendants argue that Plaintiffs should be compelled to arbitrate this dispute because Plaintiffs signed two separate agreements with Enloe Enterprises and PCG that mandate arbitration of disputes, and the subject matter of this action is within the scope of the agreements to arbitrate.  As presented, Moving Defendants' argument is facially insufficient for the court to substantively address these contentions.

As an initial matter, both Moving Defendants and Plaintiffs apply Hawaii state law in arguing whether Plaintiffs should be compelled to arbitrate, but neither party actually address why they believe Hawaii law applies.  Although the agreements were signed by Plaintiffs in Hawaii, the agreements include choice of law provisions selecting either Nevada or Utah law.  Further, from the court's review of the allegations of the Complaint and the agreements, it appears that

regardless of the general choice of law provisions in the agreements themselves, the parties' agreements are directed to interstate transactions such that the FAA applies. *See* 9 U.S.C. § 1; *see also Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010) ("'[A] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration.'" (quoting *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002))). Finally, at the hearing, counsel for Moving Defendants argued that the FAA applies, while Plaintiffs' counsel argued that Hawaii law applies. Given the deficient briefing and present conflicting positions of the parties, the court cannot even begin to address the arbitrability issue.

    Second, Moving Defendants do not establish that a valid arbitration agreement exists between the parties. *See Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1270 (C.D. Cal. 2008) ("A defendant seeking to compel arbitration has the burden of showing that an agreement to arbitrate exists."); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) (stating that the presumption in favor of arbitrability comes into effect only after the court determines that a binding agreement to arbitrate exists). In determining whether a valid arbitration agreement exists, the court must apply "state-law principles that govern the formation of contracts." *Lowden*, 512 F.3d at 1217 (citing *First*

*Options of Chi.*, 514 U.S. at 944); *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). Although Moving Defendants attach two agreements to their Motion, Moving Defendants fail to explain how these agreements establish a valid agreement to arbitrate under the applicable state law, and Plaintiffs deny ever seeing the agreements before Moving Defendants filed this Motion.[2] Further, the agreement that Enloe Enterprises relies upon is not signed by any Enloe Enterprises representative, and Moving Defendants fail to explain how this document constitutes a valid agreement despite this lack of signature. By failing to explain the applicable state law principles that govern these documents and why these documents establish a valid agreement to arbitrate, Moving Defendants have again failed to carry their burden on their Motion.

Third, Moving Defendants fail to explain in any meaningful manner how the parties' dispute falls within the scope of the arbitration agreements, given

---

[2] To the extent there are fact issues regarding whether the existence or scope of an agreement to arbitrate, such disputes would have to be settled by a jury (to the extent the FAA applies). *See* 9 U.S.C. § 4 (requiring a jury trial upon demand "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue"); *Saturday Evening Post Co. v. Rumbleseat Press*, 816 F.2d 1191, 1196 (7th Cir. 1987) (interpreting 9 U.S.C. § 4 to mean that a jury trial is required "only if there is a triable issue concerning the existence or scope of the agreement"); *see also Doctor's Assocs. Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997) (affirming the district court's denial of a request for a jury trial under 9 U.S.C. § 4 on various defenses because the party opposing arbitration had failed to show "that material facts are in dispute"); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1155 (5th Cir. 1992) (stating that to be entitled to a jury trial, a party must "show the existence of a genuine issue of fact to be tried before a jury").

that some of Plaintiffs' claims appear directed to not only Plaintiffs' investment of money with Moving Defendants but also the alleged TILA violations. Complicating this inquiry even more is that Moving Defendants include not only Enloe Enterprises and PCG, but also Enloe and Shirley, and Enloe, Shirley, and Enloe Enterprises did not sign any agreement with Plaintiffs.  Although the court recognizes that in some instances, non-signatories "may be bound by the [arbitration] agreement under ordinary contract and agency principles," *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986), the parties have not addressed whether the claims against Defendants who have not signed the agreements are subject to arbitration.[3]

Given these multiple open issues and the wholly deficient briefing, the court cannot substantively address whether Plaintiffs' claims against Moving Defendants are subject to arbitration.  The court therefore DENIES Moving Defendants' Motion to Compel Arbitration, without prejudice to Moving Defendants filing a proper Motion to Compel Arbitration addressing the issues outlined above.

---

[3] Plaintiffs also raise several defenses that would potentially void the agreements. Plaintiffs' arguments, like Moving Defendants', lack sufficient analysis for the court to substantively address them (by, for example, failing to even explain the applicable law).

## V. CONCLUSION

Based on the above, the court DENIES Moving Defendants' Motion to Dismiss and to Compel Arbitration, without prejudice to Moving Defendants filing a properly supported motion.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 6, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Sproat et al. v. JP Morgan Chase Bank N.A.*, Civ. No. 10-00519 JMS/LEK, Order Denying Defendants Enloe Enterprises, Inc., Private Capital Group, Inc., Parker Enloe, and Andrew Shirley's Motion to Dismiss and to Compel Arbitration